IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| v. | § | NO. 3:11-CR-152-L |
| | § | |
| JASON ALLEN NEFF (1) | § | |
| JEFFREY LYNN DANIELS (2) | § | |

MOTION TO HAVE CASE DECLARED COMPLEX
AND FOR A CONTINUANCE OF THE TRIAL DATE

1.      The United States of America respectfully files this motion to have this case

declared complex under the provisions of 18 U.S.C. §3161(h)(7)(B)(ii) and to continue

the date for the trial of this case from its current setting of August 8, 2011, to a date on or

after January 17, 2012.  Defendant Neff is in custody.  Defendant Daniels is not in

custody, but resides outside the state of Texas.  In support thereof, the government shows

this Honorable Court the following:

2.      Attorneys for defendants Neff and Daniels do not oppose a continuance of the trial

date.

REASONS FOR DECLARING CASE COMPLEX

3.      The trial in this case is currently set for August 8, 2011.  Defendants Neff and

Daniels are named in a five count Indictment.  Count One charged Neff and Daniels with

a violation of 18 U.S.C. §371, that being a Conspiracy to Use Access Devices to Modify

Telecommunications Instruments and to Make Unauthorized Access to Protected

**Motion to Have Case Declared Complex**
**and for a Continuance of the Trial Date -- Page 1**

Telecommunications Computers - (18 U.S.C. §§1029(a)(9); 1030(a)(5)(A)(ii) and B(iv);

1030(a)(2)(A), and 875(d)).  Counts Two and Five charged Neff with violations of

18 U.S.C. §1513(b)(2), that being Obstruction and Retaliation.  Counts Three and Four

charged Daniels with violations of 18 U.S.C. §1512(c)(1), that being Obstruction by

Destroying or Concealing Evidence.

4.      The government anticipates that its case in chief will last fourteen days.

5.      This case is "complex" within the meaning of the Speedy Trial Act, 18 U.S.C.

§3161(h)(7)(B)(ii), due to the number of the coconspirators, the nature of the prosecution,

and the complexity of the offense conduct.  Defendants Neff and Daniels were personally

involved in some of the criminal conduct and facilitated the criminal conduct of other

coconspirators as alleged in the related information *United States v. Martinez*, 3:07-CR-

111-K, and the Indictments *United States v. Stuart Rosoff, et al*, 3:07-CR-196-B (*Rosoff*

case) and *United States v. Weigman, et al*, 3:08-CR-171-M (*Weigman* case).  Defendants

Neff and Daniels were sometimes named and sometimes referred to as unnamed

coconspirators in the various preceeding Indictments and Informations.  Neff and Daniels

tampered with evidence and threatened and intimidated witnesses from the *Martinez*,

*Rosoff*, and *Weigman* cases, resulting in the obstruction allegations in the instant

Indictment.

6.      Judge Boyle found the *Rosoff* case to be complex in August 2007, finding that:

        1) the case [was] unusual and complex, and present[ed] novel issues of law

and complex facts; 2) the continuance [was] necessary to permit counsel to review of voluminous discovery materials and to adequately prepare for trial; and 3) it [was] unreasonable to expect adequate preparation for the trial within the time limits established by 18 U.S.C.§3161 and the failure to grant a continuance would deny the defendant and the attorney for the Government the reasonable time necessary for effective preparation, taking into account the exercise of due diligence; 4) the failure to grant a continuance of the trial would likely result in a miscarriage of justice; and 5) the ends of justice served by granting a continuance outweigh the best interest of the public and defendants in a speedy trial.

Order in 3:07-CR-196-B signed on August 8, 2007.

7.      Judge Lynn found the *Weigman* case to be complex in July 2008, and similarly

opined that:

> (1) [t]he case [was] unusual and complex, and involve[d] novel issues of law and technically complex facts; (2) the continuance [was] necessary to permit counsel to review of voluminous discovery materials and to adequately prepare for trial; and (3) the professional and personal obligations of counsel for both the government and for the defense, as outlined the motion, which given the exercise of due diligence nevertheless prevent[ed] the parties from being prepared for trial on the existing trial date.

Order in 3:08-CR-171-M signed on July 30, 2008.

8.      This case is "complex" within the meaning of the Speedy Trial Act, 18 U.S.C.

§3161(h)(7)(B)(ii).  The nature of the prosecution in this case requires a full

understanding offense conduct facts and full discovery of the evidence in the underlying

case.

**Offense Conduct Overview:**

9.      The coconspirators, including Neff and Daniels, participated in multiple telephone

party line chat groups[1] (party lines) with coconspirators Stuart Rosoff, Chad Ward, Jason

Trowbridge, Angela Roberson, Guadalupe Santana Martinez, Matthew Weigman, and

others.  The coconspirators agreed among themselves to conduct swatting[2] calls for the

purpose of harassing targeted individuals, many of whom were participants in the party

lines, and their families.  In order to make the swatting calls, coconspirators made

unauthorized access to telecommunication company information stored on protected

computers.  This unauthorized access allowed the coconspirators to obtain personal

identity information of their intended targets, and to use software and hardware

configured to insert or modify telecommunication access devices and account information

for telephone customers and employees to obtain free telephone service or discontinue

service for telephone subscribers.  Coconspirators turned on telephone service for each

other through customer service of various telecommunication providers, sometimes in the

---

[1]      A telephone party line was a type of telephone conference which members accessed by calling a local or toll free telephone number.  The ostensible purpose of the party line was to provide a social network for individuals, many of whom were located in different states, to visit and socialize.  The party line permitted a limited number of members to visit in an open conference "room" or to visit in smaller numbers in separate private "rooms" if they elected to do so, similar to Internet Relay Chat rooms, but on the telephone.

[2]      A "swatting 911 call" was a false 911 call made to police in which a false report of a violent crime was made in order to elicit a police Special Weapons and Tactics squad (SWAT) response to the physical address of a targeted individual, his or her family members, or place of employment.  A variation of the "swatting" activity included making false reports to child protective services, hospitals, landlords, or employers to adversely affect a targeted chat/party line member, his or her family members, and others.

**Motion to Have Case Declared Complex**
**and for a Continuance of the Trial Date -- Page 4**

name of unwitting third parties.  Coconspirators turned off telephone services for targeted

party line participants, and conducted "swats" on targeted party line participants, the

targets' friends and families for harassment and extortion.  Approximately fifteen to

twenty party line participants agreed to participate and did participate as coconspirators in

targeting, executing and obtaining information to facilitate swatting calls.   During the

conspiracy, certain coconspirators obtained personal identification information on

individuals targeted for swatting from the party line conversations and from using social

engineering[3] techniques on telephone company employees and others.   Specifically,

coconspirator Trowbridge obtained personal identification information by exceeding his

authorized access to Accurint, a commercial database which contained from the files of a

consumer reporting agency.

10.    Coconspirators placed the "swatting" calls using a voice over internet protocol

phone (VoIP) and a spoof card[4] to conceal their true identities, and to make it appear to

emergency services that the call was a true emergency from the targeted individual's

residence or work address.

---

[3]    To "socially engineer" meant to impersonate someone, i.e. a telephone system employee
or other person, in order to gain the cooperation of that person to obtain information or unauthorized
access to telephone systems.

[4]    To "spoof" meant the act of falsifying Caller I.D. information to conceal the true Caller
I.D. of a telephone call.  A "spoofcard" was a type of commercial account accessible either online or by
telephone which provides an access device, i.e. a number or computer code, which enables the caller to
elect a number of services including the concealment of the caller's true Caller I.D. by substituting
another Caller I.D., changing the caller's voice to another gender, and/or recording the call on the
company's servers.

**Motion to Have Case Declared Complex**
**and for a Continuance of the Trial Date -- Page 5**

11.     The means by which the defendants and the coconspirators committed the crimes

were factually and technically complex in that it involved commercial "spoof" cards,

VoIP or voice over internet calling systems, social engineering and the use of telephone

company passwords, codes, facilities and equipment to change caller I.D. information and

to obtain personal identification information about telephone company customers and

employees.  Much of the evidence subject to discovery will be digital data which was

forensically obtained from business and personal computers.  The undersigned

understands that such evidence includes:

      a.  the contents of approximately two dozen data storage devices,

      b.  over 3,000 pages of documents from police department records, telephone

      company records, and

      c.  Hundreds of hours of audiotape recordings - from party line conversations, 911

and other "swatting" calls, telecommunication customer service recordings, and telephone

calls from jail.

<u>ADDITIONAL REASONS FOR A CONTINUANCE</u>

12.     Whether the case is formally declared "complex" or not, the following reasons

support the requested continuance:

      a.  The volume of documentary evidence obtained from searches, victims,

      subpoenaed sources, police departments, computer examinations, etc. is

      extraordinary; time is needed to review and analysis the evidence.

b.  Expert witnesses may be needed to testify at trial, and additional time is needed to locate and retain experts, and permit the experts to review any relevant documents.

c.  The undersigned has the following conflicts in 2011:

    (i) Out of state vacation, with prepaid airfare and hotel, scheduled for June 22, 2011 to June 30, 2011; and

    (ii)  A month long trial in *United States v. Faulkner*, 3:09-CR-249-D, set to start on October 11, 2011.

d.  Daniel's attorney, Davis McCown advised the undersigned that he has the following scheduling conflicts:

    (i) Scheduled vacation from August 8, 2011 through August 12, 2011; and

    (ii) State trial settings on August 22, 2011, October 10, 2011, and October 17, 2011.

e.  Neff is in custody at the FCI Seagoville Detention Center and Daniels resides out of state, thus making discovery efforts more difficult for the local counsel of record.  Neff's attorney was appointed and Daniels' attorney was retained.

13.   The United States respectfully requests that this Court (a) issue a written order declaring that this case is a "complex" case within the meaning of 18 U.S.C. §3161(h)(7)(B)(ii), and setting out the basis of granting the requested continuance, (b) vacate the current trial setting and related deadlines, (c) reset the case for a date on or after **January 17, 2012**, and (d) issue a new scheduling order with new pretrial deadline

**Motion to Have Case Declared Complex**
**and for a Continuance of the Trial Date -- Page 7**

dates consistent with the new trial date.

Respectfully submitted,

JAMES T. JACKS
United States Attorney


s/ Candina S. Heath
CANDINA S. HEATH
Assistant United States Attorney
candina.heath@usdoj.gov
Texas State Bar. No. 09347450
1100 Commerce Street, 3d Floor
Dallas, Texas  75242
Telephone: 214.659.8600

## CERTIFICATE OF CONFERENCE

I hereby certify that on June 7, 2011 in person and again on June 17, 2011 by
email, I discussed the filing of this motion with Davis McCown, attorney for defendant
Daniels and Charles F. Allan, attorney for defendant Neff.    Mr. McCown and Mr. Allan
did oppose the motion to designate the case complex and did not oppose a continuance of
the trial date.


s/ Candina S. Heath
CANDINA S. HEATH
Assistant United States Attorney

## CERTIFICATE OF SERVICE

I hereby certify that on June 20, 2011, I electronically filed the foregoing document with the clerk for the U.S. District Court, Northern District of Texas, using the electronic case filing system of the court.  The electronic case filing system sent a "Notice of Electronic Filing" to Charles F. Allan and Davis McCown, attorneys for defendants, who consented in writing to accept this Notice as service of this document by electronic means.

s/ Candina S. Heath
CANDINA S. HEATH
Assistant United States Attorney