IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA**, § | |
| § | |
| Plaintiff, § | |
| v. § | Criminal Action No. **3:11-CR-0152-L** |
| § | |
| **JASON ALLEN NEFF**, § | |
| § | |
| Defendant. § | |

## MEMORANDUM OPINION AND ORDER

Before the court is Defendant's Motion for Pretrial Release, or Provision of a Secure Laptop Computer, or Reconsideration of the Motion for Defendant to Have Reasonable Access to Digital Evidence, filed September 26, 2012. After careful review of the motion, responses, record, and applicable law, the court **denies** Defendant's Motion for Pretrial Release, or Provision of a Secure Laptop Computer, or Reconsideration of the Motion for Defendant to Have Reasonable Access to Digital Evidence, except to the extent that the court **directs** the warden of FCI Seagoville to allow Defendant Jason Allen Neff **seven hours per day** access to electronic discovery rather than the customary five hours.

### I.     Factual and Procedural Background

On September 2, 2010, the United States of America (the "government") filed a criminal complaint against Defendant Jason Allen Neff in the Northern District of Texas, alleging violations of 18 U.S.C. §§ 371 and 1512(k). A warrant was issued under seal on the same date for Defendant's arrest. Defendant was arrested and presented before Magistrate Judge Whitworth in the Western District of Missouri on May 4, 2011. The government moved for pretrial detention of Defendant.

At the detention hearing, the magistrate judge determined, by clear and convincing evidence, that there was a serious risk that Defendant would not appear and that he would endanger the safety of another person or the community because:

> 1) defendant has two pending state felony charges in Camden County, Missouri, for statutory sodomy and child molestation; 2) defendant has history of threatening and intimidating witnesses; 3) defendant has history of violent behavior; 4) defendant has prior criminal history and fugitive status; 5) defendant has substantial history of using other names; aliases and false identification; [and] 6) serious nature of the offenses charged, that is, "swatting," threats to public safety and to individuals and intimidating witnesses."

Accordingly, the magistrate judge ordered Defendant detained before trial. Defendant was later named in a five-count indictment that charged him with Conspiracy to Use Access Devices to Modify Telecommunication Instruments and to Make Unauthorized Access to Protected Telecommunications Computers (Count One), in violation of 18 U.S.C. §§ 371, 1029(a)(9), 1030(a)(5)(A)(ii) and B(iv), 1030(a)(2)(A), and 875(d); and two counts of Obstruction of Justice: Retaliation Against a Witness, Victim, or an Informant (Counts Two and Five), in violation of 18 U.S.C. § 1513(b)(2).

On June 20, 2011, the government moved to continue the date for trial and to have the case declared complex under 18 U.S.C. § 3161(h)(7)(B)(ii), due to the number of coconspirators, the nature of the prosecution and the complexity of the offense conduct. On June 23, 2011, the court granted the motion. In January 2012, Defendant filed a Motion for Reasonable Access to Digital Data while at FCI Seagoville Detention Center ("FCI Seagoville"). The motion was referred to Magistrate Judge Stickney, who, after having had numerous conversations with the Bureau of Prisons, the government, and Defendant's counsel, denied the motion as moot because he found that Defendant was already receiving adequate access to electronic discovery in pretrial confinement.

## II.   Defendant's Motion for Pretrial Release

Defendant moves this court to revoke or amend the magistrate judge's pretrial detention order to allow Defendant pretrial release with GPS monitoring. Def. Mot. for Pretrial Release, or Provision of a Secure Laptop Computer, or Reconsideration of the Mot. for Def. to Have Reasonable Access to Digital Evidence 1. In response, the government objects to Defendant's request to the extent that Defendant fails to articulate any authority through which the court could release him on conditions after a detention hearing and detention order was issued by a magistrate judge. Government's Resp. to Neff's Mot. for Pretrial Release, or Provision of a Secure Laptop Computer, or Reconsideration of the Mot. for Def. to Have Reasonable Access to Digital Evidence. Specifically, the government asserts that Defendant has failed to identify new information that has any material bearing on the issues of detention that would justify reopening his detention hearing under 18 U.S.C. § 3142(f)(2). Therefore, the government argues, Defendant's request should be denied.

### A.   Legal Standard

"When the district court, pursuant to 18 U.S.C. § 3145(b), acts on a motion to revoke or amend a magistrate's pretrial detention order, the court acts *de novo* and makes an independent determination of the proper pretrial detention or conditions for release." *United States v. Fortna*, 769 F.2d 243, 249 (5th Cir. 1985) (citations omitted). "Under the Bail Reform Act [the "Act"], a defendant shall be released pending trial unless a judicial officer determines that release will not reasonably assure the appearance of the person as required or will endanger the safety of any other person or the community." *United States v. Hare*, 873 F.2d 796, 798 (5th Cir. 1989). "[T]he lack of reasonable assurance of *either* the defendant's appearance or the safety of others or the community

Memorandum Opinion and Order - Page 3

is sufficient; both are not required." *Fortna*, 769 F.2d at 249 (citations omitted). "[I]n determining whether there are conditions of release that will reasonably assure the appearance of the person as required and the safety of any other person and the community," a court must consider: "(1) the nature and circumstances of the offense charged . . . ; (2) the weight of the evidence against the person; (3) the history and characteristics of the person . . . ; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release." 18 U.S.C. § 3142(g). "With respect to the quantum or character of proof, . . . the Act provides that the facts the judicial officer uses to support a finding pursuant to subsection (e) that no condition or combination of conditions will reasonably assure *the safety* of any other person and the community shall be supported by clear and convincing evidence." *Fortna*, 769 F.2d at 250 (quoting § 3142(f)) (internal quotation marks omitted). In ascertaining whether risk of flight warrants detention, a preponderance of the evidence standard is used, and "the judicial officer should determine, from the information before him, that it is more likely than not that no condition or combination of conditions will reasonably assure the accused's appearance." *Id.* (citation omitted).

    **B.**     **Analysis**

The court, conducting a *de novo* review of the transcripts of Defendant's preliminary hearing and detention hearing, determines that the section 3142(g) factors weigh in favor of detention. With respect to the first section 3142(g) factor, the "nature and circumstances of the offense charged," Defendant is charged with one count of Conspiracy to Use Access Devices to Modify Telecommunication Instruments and to Make Unauthorized Access to Protected Telecommunications Computers (Count One), in violation of 18 U.S.C. §§ 371, 1029(a)(9), 1030(a)(5)(A)(ii) and B(iv), 1030(a)(2)(A), and 875(d); and two counts of Obstruction of Justice:

Retaliation Against a Witness, Victim, or an Informant (Counts Two and Five), in violation of 18 U.S.C. § 1513(b)(2). The retaliation charges are offenses that include causing bodily injury to another person or damaging the tangible property of another person, or threatening to do so, with the intent to retaliate against any person for providing information to law enforcement relating to the commission or possible commission of a federal offense. 18 U.S.C. § 1513(b)(2). Pursuant to 18 U.S.C. § 371, the conspiracy charge carries a maximum five-year sentence, and pursuant to 18 U.S.C. § 1513(e), Defendant's alleged obstruction of justice violations carry a maximum sentence of ten years for each count. If convicted, Defendant faces a potentially lengthy prison sentence, which presents a motive to flee. This factor weighs in favor of detention. *See United States v. Stanford*, 630 F. Supp. 2d 751, 755 (S.D. Tex. 2009), *aff'd*, 341 F. App'x 979 (5th Cir. 2009) (finding that the severity of the defendant's potential term of imprisonment weighed in favor of detention).

With respect to the second section 3142(g) factor, "the weight of the evidence against the person," the court determines that the government put forth sufficient evidence at Defendant's preliminary and detention hearings to support the three counts with which he is charged. Defendant is accused of "swatting" calls. A "swatting 911 call" is a false 911 call made to police in which a false report of a violent crime is made to elicit a police Special Weapons and Tactics squad ("SWAT") response to the physical address of a targeted individual, his or her family members, or place of employment. A variation of the swatting activity that Defendant is accused of included making false reports to child protective services, hospitals, landlords, or employers to adversely affect a targeted chat/party line member, his or her family members, and others. At the hearings, an Federal Bureau of Investigation ("FBI") agent testified to identifying Defendant as a participant in

**Memorandum Opinion and Order - Page 5**

the conspiracy from telephone records, several witnesses, his alleged coconspirators, and comments Defendant allegedly made himself in recorded telephone conferences and instant message chats. Prelim. Hr'g Tr. 8, 14. According to the agent, the FBI identified "hundreds of such calls performed by Mr. Neff and his compatriots." *Id.* at 13. As for the retaliation charges, the FBI agent testified that at least three witnesses informed investigators that Defendant retaliated against them and continued to harass them while in prison. *Id.* at 28; Pretrial Det. Hr'g Tr. 28-29. The court believes the government has met its burden in demonstrating the weight of evidence against Defendant and finds this factors weighs in favor of Defendant Neff's detention.

The third section 3142(g) factor, "the history and characteristics of the person," supports detention. In considering this factor, a court looks to available information regarding "the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings." 18 U.S.C. § 3142(g)(3)(A). The court considers Defendant's character and past conduct in tandem. The testimony and information submitted at the detention hearing established by clear and convincing evidence that Defendant has two pending state felony charges for statutory sodomy and child molestation, and that he has a history of threatening and intimidating witnesses, a history of violent behavior, prior criminal history and fugitive status, and a history of using aliases and providing false identification. Defendant has not offered any evidence to suggest that, despite these findings regarding his character and past conduct, he will not pose a danger to the community. Thus, the court determines that Defendant's history of fugitive status, using aliases and providing false identification is evidence that Defendant can be elusive, and, in light of the statutory maximum of

twenty-five years and pending state felony charges, he is likely to flee. Furthermore, in light of Defendant's history of violent behavior and threatening and intimidating witnesses, the court determines that there is a serious risk that Defendant poses a danger to the safety of another person or the community.

The fourth section 3142(g) factor, "the nature and seriousness of the danger to any person or the community that would be posed by the person's release," has been considered by courts in the flight risk analysis. *See Stanford*, 341 F. App'x at 983 (observing that in ascertaining whether risk of flight warrants detention, "neither party argue[d] that the fourth § 3142(g) factor, 'the nature and seriousness of the danger to any person or the community that would be posed by the person's release,' is applicable to Stanford, [and] the district court made no findings of fact with respect to this element."). Based on Defendant's present retaliation charges and his history of threatening and intimidating witnesses, the court determines that this factor also weighs in favor of detention.

The evidence and record as a whole support the magistrate's finding that Defendant poses a serious risk of flight and serious risk of safety to the community. The totality of the factors considered above warrants detention of Defendant Neff. Therefore, the court concludes that it is more likely than not that there is no condition or combination of conditions will reasonably assure Defendant Neff's presence at trial as required and the safety of any other person and the community. 18 U.S.C. § 3142(e).

### III.   Defendant's Motion for Provision of a Secure Laptop Computer or for Reconsideration of the Motion to Provide Defendant with Reasonable Access to Digital Evidence

Defendant requests in the alternative for counsel to provide him with a secure laptop for review of the digital evidence while in pretrial confinement, or for reconsideration of his previous motion for reasonable access to electronic evidence. Defendant contends in his motion that the

**Memorandum Opinion and Order - Page 7**

denial of access to digital evidence in an extended and complex case is a deprivation of his Fifth and Sixth Amendment rights to due process of law and effective representation of counsel. In response, the government asserts that it does not object to Defendant having reasonable access to digital data; however, it objects to any notion that he has a constitutional right to a laptop or the prison computers.

### A.     Legal Standard

The Fifth Amendment guarantees every criminal defendant the right to due process of law. U.S. Const. amend. V. This "constitutional guarantee of due process of law has as a corollary the requirement that prisoners be afforded access to the courts." *Procunier v. Martinez*, 416 U.S. 396, 419 (1974), *overruled on other grounds by Thornburgh v. Abbott*, 490 U.S. 401 (1989). Further, the Sixth Amendment guarantees a criminal defendant the right to effective assistance of counsel, *Strickland v. Washington*, 430 U.S. 816, 821 (1977), which implicitly includes the right to meaningful access to counsel. "This means that inmates must have a reasonable opportunity to seek and receive the assistance of attorneys," and, therefore, "[r]egulations and practices that unjustifiably obstruct the availability of professional representation or other aspects of the right of access to the courts are invalid." *Procunier,* 416 U.S. at 419 (citation omitted).

The government contends that Defendant's request for access to the electronic discovery in this case alleges a violation of his First Amendment rights—not his Fifth and Sixth Amendment rights. In its response, the government refers to the right of access to the courts recognized by the Supreme Court in *Bounds v. Smith*, 430 U.S. 817, 828 (1977), and *Lewis v. Casey*, 518 U.S. 343, 350 (1996); however, the court determines that the constitutional right of access to the courts discussed in those two cases is not implicated here. This is because Defendant is a pretrial detainee, not a

**Memorandum Opinion and Order - Page 8**

convicted prisoner, and any restrictions placed on his ability to review discovery and assist his counsel in preparation of his defense burdens his Fifth Amendment right to access to the courts and his Sixth Amendment right to counsel—not his First Amendment rights. *See, e.g.*, *Benjamin v. Fraser*, 264 F.3d 175, 184 (3d Cir. 2001) ("[T]he right to counsel and the right of access to the courts are interrelated, since the provision of counsel can be a means of accessing the courts. However, the two rights are not the same. The access claims at issue in *Lewis* concerned the ability of convicted prisoners 'to attack their sentences, directly or collaterally, and . . . to challenge the conditions of their confinement.' By contrast, here we are concerned with the Sixth Amendment right of a pretrial detainee, in a case brought against him by the state, to utilize counsel in his defense.") (citation omitted); *see also United States v. Chatman*, 584 F.2d 1358 (4th Cir. 1978) (noting that "*Bounds* was concerned with the rights to equal protection and to access to the courts of prisoners who sought to invoke *post-conviction* relief.") (emphasis added).

This fundamental constitutional right of access to the courts, however, does not include a constitutional right to a personal computer. *See Lehn v. Hartwig*, 13 F. App'x 389, 392 (7th Cir. 2001) ("If prisoners have no constitutional right to a typewriter, they certainly do not have one to a computer.") (internal citations omitted); *see also Robinson v. Joya*, Civ. No. 08-1339, 2010 WL 1779885, at *3 (E.D. Cal. Apr. 29, 2010) ("No court has found that *prisoners* have a constitutional right to possess personal computers, or items that are similar to personal computers, in their cells.") (citations omitted).[*]

---

[*] Although these cases concerned the claims of convicted prisoners, the court sees no reason why the reasoning in these cases is not equally applicable to those involving pretrial detainees in this regard.

The Supreme Court has held that, "when an institutional restriction infringes a specific constitutional guarantee, . . . the practice must be evaluated in the light of the central objective of prison administration, safeguarding institutional security." *Bell v. Wolfish*, 441 U.S. 520, 547 (1979) (citations omitted). Because of "the problems that arise in the day-to-day operation of a corrections facility," courts should give prison administrators "wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." *Id.* (citations omitted).

### B.     Analysis

Defendant filed his first Motion for Reasonable Access to Digital Data while at FCI Seagoville, which the magistrate judge denied as moot because he found that Defendant was already receiving adequate access to electronic discovery in prison. According to the government, FCI Seagoville currently has equipment and procedures in place to provide detainees with access to desktop computers for up to five hours per day to review discovery materials, to which Defendant has been provided access. Nonetheless, Defendant requests that he be allowed possession of a personal laptop computer while incarcerated, despite being advised by the BOP that detainees are not permitted to possess laptop computers for various safety reasons. Contrary to what Defendant contends, he does not have a constitutional right to a personal laptop to help his attorney prepare his defense. Defendant is represented by counsel, who does not have any limitations on computer access or usage. For these reasons, the court is not convinced that Defendant should be provided with possession of a laptop computer while in pretrial confinement. Accordingly, Defendant's request for provision of a secure laptop computer while in pretrial confinement is denied.

In the alternative, Defendant requests the court to reconsider his previous Motion for Reasonable Access to Digital Evidence and specifically allow Defendant access to the law library and the e-discovery capable computer therein from 9 a.m. to 5 p.m. daily.  Given the nature of the charges, the voluminous discovery, and the complexity of this case, the court believes the number of hours per day of access to electronic discovery should be increased to **seven hours**, from the normal five hours, and the court will order FCI Seagoville to make this adjustment solely for the purposes of this case.  If the increase in hours presents a problem with respect to prison administration or internal security at FCI Seagoville, the warden or other person acting in the warden's capacity shall **promptly** notify the court and state with specificity the problem that the increase in hours causes FCI Seagoville.  The court emphasizes that this increase of the normal policy is of limited duration and only for this particular case.

## V.    Conclusion

For the reason herein stated, the court **denies** Defendant Jason Allen Neff's Motion for Pretrial Release, **denies** the Provision of a Secure Laptop Computer, or Reconsideration of the Motion for Defendant to Have Reasonable Access to Digital Evidence, except to the extent that the court **directs** the warden of FCI Seagoville to allow Defendant Jason Allen Neff **seven hours per day** access to electronic discovery rather than the customary five hours.  The clerk of the court shall serve a copy of this order on the warden or warden's representative forthwith.

**It is so ordered** this 3rd day of January, 2013.

Sam A. Lindsay
United States District Judge