ORIGINAL

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF
TEXAS DALLAS DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § § | |
| VS. | § § | NO. 3:11-CR-152-L |
| | § | ECF |
| JASON ALLEN NEFF (1) | § | |

## FACTUAL RESUME

Jason Allen Neff, the defendant's attorney Bruce Anton, and the United States of America (the government) agree that the following is true and correct:

**Essential Elements**:

1. Neff agrees that the offense of "aiding and abetting," in violation of 18 U.S.C. § 2 is not a separate offense, but rather is an alternative charge available in every indictment.[1] The words "aiding and abetting" do not need to appear in the indictment, nor does the indictment have to make reference to 18 U.S.C. § 2 to convict Neff on an aiding and abetting theory.

2. In order to prove that Neff was guilty of **aiding and abetting** in **Count One** of the Indictment, the government would be required to prove beyond a reasonable doubt the following essential elements of a violation of 18 U.S.C. § 2, (Aiding and Abetting a Conspiracy to Use Access Devices to Modify Telecommunications Instruments or to Make Unauthorized Access to Protected Telecommunications Computers):

---

[1] *United States v. Botello*, 991 F.2d 189, 192 (5th Cir. 1993); *United States v. Casilla*, 20 F.3d 600, 603 (5th Cir. 1994).

1   Factual Resume – Neff                                                                 Neff's Initials: _J.N._

First:  That the offense of Conspiracy to Use Access Devices to Modify Telecommunications Instruments was committed by some person;

Second:  That Neff associated with the criminal venture;

Third:  That Neff purposefully participated in the criminal venture; and

Fourth:  That Neff sought by action to make that venture successful.

The essential elements of Conspiracy (18 U.S.C. §371) are that:

First:  At least two individuals (conspirators) made an agreement to commit the crime of Access Device Fraud (18 U.S.C. § 1029(a)(9);

Second:  The conspirators knew the unlawful purpose of the agreement and joined in it willfully, that is, with the intent to further the unlawful purpose; and

Third:  One of the conspirators during the existence of the conspiracy knowingly committed at least one of the overt acts described in Count One of the Indictment, in order to accomplish some object or purpose of the conspiracy.

The essential elements of Access Device Fraud (18 U.S.C. §1029(a)(9)) are that:

First:  A conspirator knowingly used or controlled hardware or software that had been configure to insert or modify telecommunication identifying information associated with a telecommunications instrument so that the instrument may be used to obtain telecommunications services without authorization; and

Second:  The conspirator knew that the software or hardware had been so configured; and

Third:  The conspirator's conduct affected interstate commerce.

3.  In order to prove that Neff was guilty in Count Two of the Indictment, the government would be required to prove beyond a reasonable doubt the following essential elements of a violation of 18 U.S.C. §1513(b)(2) that being Retaliating Against a Witness, Victim, or an Informant:

First: Neff knowingly threated to cause bodily injury to another person, as charged in the Indictment; and

Second: Neff did so with the intent to retaliate against that person for providing to a law enforcement officer any truthful information relating to the commission of a Federal offense.

## FACTUAL STIPULATIONS

Defendant Jason Allen Neff ("Neff") stipulates and agrees to the following facts in support of his guilty plea:

1. "Swatting" meant placing a telephone call to a police department or emergency responder from a spoofed telephone number and falsely reporting an emergency situation at the address associated with the spoofed telephone number in order to cause a law enforcement swat team (Special Weapons and Tactics) or other emergency responder to respond to the hoax call at the address. Sometimes these calls constituted a false accusation of criminal conduct by the individual.

2. "Social engineering" meant to impersonate someone, i.e. a telephone system employee or other person, in order to gain the cooperation of an unsuspecting party in order to obtain information or unauthorized access to telephone systems. Previously convicted conspirators Matthew Weigman, Stuart Rosoff, Chad Ward, Guadalupe Martinez, Angela Roberson, Jason Trowbridge[2] (jointly referred to as conspirators), and others obtained name, address or phone number information for use in harassing or

---

[2] Rosoff, Trowbridge, Ward, Martinez, Roberson, and Weigman were named defendants in either the Northern District of Texas (NDTX) Criminal Complaint, 3:06-MJ-532, Indictment 3:07-CR-196-B or Indictment 3:08-CR-171-M.

3   Factual Resume – Neff                                        Neff's Initials: _JN_

swatting from social engineering techniques on telephone company employees and others.

3. Neff participated in multiple telephone party line chat groups (party lines). Conspirators and thousands of other callers frequented these party lines. Participants in the party lines generally used pseudonyms or nicknames to protect their identities. Participants often would act rude and obnoxious to antagonize other party line participants. Conspirators would make harassing or swatting calls to intimidate and harass "targeted" party line participants, other conspirators, or their families. In fact, party line conspirators targeted the Neff home on several occasions.

4. Neff knew from party line discussions that in order to make or facilitate harassing or swatting calls, the conspirators and others made or assisted each other in obtaining unauthorized access to telecommunication company information stored on protected computers in order to obtain names, addresses or phone numbers of their intended targets. Neff knew from party line discussions that one or more of the conspirators used software and/or hardware configured to insert or modify telecommunication access devices. This configuration allowed one or more of the conspirators to place phone calls for swatting or harassment, to obtain account information of telephone customers, or to discontinue service for telephone subscribers. This conduct affected interstate commerce.

5. To facilitate a harassing or swatting call, typically one or more of the conspirators, or Neff, would a) through fraudulent means, obtain the personal identifiers, such as passwords and access codes, addresses, or telephone numbers, of certain

telecommunication employees; b) impersonate the customer of the targeted telephone number; c) impersonate the telecommunications employee capable of initiating changes to the targeted telephone number, or (d) through the means above, temporarily modify/terminate actual telephone accounts.

6. On or about May 28, 2006, Neff obtained publicly available voter information about another party line member and provided it to Roberson via Yahoo Instant Messenger, so that Roberson could repeat the information in the party line. Neff knew that the information could have been used for harassment.

7. On or about May 31, 2006, Neff obtained identifying information about another party line member with whom Roberson was upset. Neff listened in on a three-way phone call made form a private room on the party line where Rosoff successfully used information provided by Roberson to social engineer an SBC employee, obtaining the callers current phone number and address. The information was verified, and used to prompt a neighbor of the caller to respond to a false request for assistance.

8. In or about January 2007, Neff confronted party line member SP on the party line, regarding her providing misleading and inaccurate information to the FBI regarding his ownership of a party-line related website, which he did not own, and his being a member of the group that had previously swatted her. Neff threatened SP on the party line, stating "snitches get stitches." Neff made the threats with the intent to intimidate SP, and to retaliate against SP for providing information about him to the FBI. While Neff wanted SP to believe that she should be fearful, Neff states that he never had the wherewithal or intended to physically harm SP.

SARAH R. SALDAÑA
UNITED STATES ATTORNEY

---

CANDINA S. HEATH
Assistant United States Attorney
Texas State Bar No. 09347450
1100 Commerce Street, Third Floor
Dallas, Texas 75242-1699
Tel: 214.659.8600
Fax: 214.767.2846
candina.heath@usdoj.gov

*CSH*

 

I have read (or had read to me) this Factual Resume and have carefully reviewed every part of it with my attorney. I fully understand it and voluntarily agree that the facts received herein are true and correct.

*/s/ Jason Neff*           7-18-14
JASON ALLEN NEFF          Date
Defendant

      I am defendant's counsel. I have carefully reviewed every part of this Factual Resume with the defendant. To my knowledge and belief, my client's decision to sign the Factual Resume is an informed and voluntary one, and that according to my client the facts recited herein are true and correct.

_____             __7-18-14_____
BRUCE ANTON                                Date
Attorney for Defendant